**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN DORKOSKI,** | : | |
| **Plaintiff** | : | |
| | | **CIVIL ACTION NO. 4:05-0705** |
| **v.** | : | |
| | | **(MANNION, J.)** |
| **CHARLES E. PENSYL, III; MARK** | : | |
| **A. COSTA; EDWARD GRIFFITHS;** | | |
| **ROBERT JOHN; EDWARD** | : | |
| **PURCELL; RICHARD B. HIGGINS;** | | |
| **ROBERT J. WOLFE,** | : | |
| **Defendants** | : | |

<u>**MEMORANDUM AND ORDER**</u>

Presently pending before the court are the Shamokin Township defendants' (Costa, Griffiths, and Wolfe)[1] motion and amended motion for partial summary judgment, (Doc. Nos. 39 & 45)[2], and the Coal Township defendants' (Pensyl, Purcell and Higgins) motion for partial summary judgment, (Doc. No. 42).

I.    **PROCEDURAL HISTORY**

The plaintiff initiated the instant action on April 7, 2005.  An answer to the plaintiff's complaint was filed on behalf of the Shamokin Township defendants on May 24, 2005.  The Coal Township defendants filed their

---

[1]This group included Robert John, who was later dismissed from the action by stipulation of the parties.

[2]The court considers these documents collectively.

answer to the plaintiff's complaint on May 27, 2005.

On June 29, 2006, after completion of discovery, the Shamokin Township defendants filed a motion for partial summary judgment, along with a statement of facts and supporting exhibits.

On July 3, 2006, a motion for partial summary judgment was filed on behalf of the Coal Township defendants, along with a statement of facts and supporting exhibits.

On July 7, 2006, the Shamokin Township defendants filed an amended motion for partial summary judgment, adding Counts X and XI.  In addition, the Shamokin Township defendants filed a brief in support of their motion and amended motion for partial summary judgment.

On July 13, 2006, the Coal Township defendants filed a brief in support of their motion for partial summary judgment.

On July 24, 2006, the plaintiff filed briefs in opposition to both the Shamokin Township defendants' motion and amended motion for partial summary judgment, and the Coal Township defendants' motion for partial summary judgment.  In addition, the plaintiff filed supporting exhibits and statements/counter-statements of material facts.

On August 4, 2006, the Shamokin Township defendants filed a reply brief.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©.

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  Id.  The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the

3

evidence presented, could find for the nonmoving party." <u>Childers v. Joseph</u>, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted).  Material facts are those which will effect the outcome of the trial under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The court may not weigh the evidence or make credibility determinations.  <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998).  In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party.  <u>Id.</u> at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor.  <u>Id.</u>

## III.    DISCUSSION

The plaintiff's complaint alleges as follows:

On June 5, 2003, defendant Pensyl, a detective with the Coal Township Police Department, arrested the plaintiff for aggravated assault, simple assault, obstructing administration of law or other governmental function, hindering apprehension or prosecution, and disorderly conduct. These charges stemmed from an incident wherein police officers from the Shamokin Police Department and the Coal Township Police Department were looking for the plaintiff's son, Kip Dorkoski, ("Kip").  During their search for Kip, he

4

fled into an apartment which is owned by the plaintiff and located in a detached garage on the plaintiff's property at 911 West Pine Street in Coal Township, Pennsylvania.

Some of the defendants approached the plaintiff and told him that they were looking for his son. The plaintiff informed them that, to his knowledge, his son was not there. The plaintiff inquired as to whether the defendants had a search or arrest warrant, to which the defendants replied that they did not and that they did not need one.

One of the defendants asked the plaintiff to open the door to the garage which led to the apartment. When the plaintiff refused one of the defendants indicated that they would "break it down." As the defendants attempted to break down the door, the plaintiff alleges that he attempted to remove a piece of steel that was laying on the ground near the door, so that nobody would trip over it and hurt themselves. As he did so, the defendants grabbed him from behind and threw him to the ground. One of the defendants put his knee into the plaintiff's back and pushed his face into the ground. One of the defendants yelled at the plaintiff to get his arms out from under his body, which he could not do because of the defendant officer's weight on his back. During this attack, the plaintiff's ears and neck were turning red, which was allegedly noticed by one of the defendants, who failed to intervene to assist him.

At some point, the defendants brought the plaintiff to his feet and

handcuffed him behind his back.  He was then thrown up against a fence, with some of the defendants immobilizing his head and neck so that he was unable to see the activities of the other defendants.  One of the defendants reached into the plaintiff's pockets and removed two sets of keys and $130.00.  The defendants then used the keys, without permission, to enter the apartment and apprehend Kip.

The plaintiff's complaint alleges that some of the defendants actively participated in attacking him and entering his home without consent or a warrant, while others simply watched and failed to intervene.  The plaintiff alleges that the charges brought against him were an attempt to cover up and justify the defendants' conduct.  According to the plaintiff, there was no probable cause to bring the charges against him and the only reason that the charges were brought was an attempt by the officers to protect themselves from the consequences of their actions in brutalizing the plaintiff and entering his home and/or allowing these events to take place without intervening.

According to the complaint, the plaintiff had to be taken to the emergency room at Shamokin Hospital following the incident because of injuries sustained during the attack.  Once released from the emergency room, the plaintiff was detained in the holding cell at the Coal Township police station for several hours before he was arraigned and released on bail.

On October 1, 2003, following a preliminary hearing, District Justice Gembic dismissed all charges against the plaintiff based on the

Commonwealth's failure to establish a prima facie case.

The plaintiff alleges that the defendants conspired to commit the above acts or omissions and acted overtly in furtherance of that conspiracy.

Based upon the above allegations, the plaintiff brought the instant action alleging violations of his civil rights pursuant to 42 U.S.C. §1983 (Counts I-V), and state law claims for malicious prosecution (Count VI), abuse of process (Count VII), assault (Count VIII), battery (Count IX), intentional infliction of emotional distress (Count X), and trespass (Count XI).

In an attempt to pierce the allegations of the plaintiff's complaint and support their motions for partial summary judgment, the defendants have submitted statements of material facts, the following of which are not in dispute[3]:

On June 5, 2003, defendant Costa responded to a radio call of an assault outside of a Shamokin Bank.  Upon arrival, defendant Costa interviewed the victim, Michael Gilligbauer.  Mr. Gilligbauer reported that Kip had attacked him as he was leaving the bank[4].  Mr. Gilligbauer reported that he was Kip's ex-wife's boyfriend.  According to Mr. Gilligbauer, Kip shoved his thumbs into both of Mr. Gilligbauer's eyes, bit him on the upper arm and

---

[3]The court has combined the statements of material facts provided by the Shamokin and the Coal Township defendants.

[4]The plaintiff disputes the relevancy of the facts surrounding the arrest of Kip.  These facts are relevant to the extent that they were the precipitating factor in the entry upon the plaintiff's land and into his property.

threatened him with either a bat or pipe.  Mr. Gilligbauer indicated that Kip then fled the area in his pick-up truck, yelling that he was going to kill Mr. Gilligbauer[5].  In interviewing Mr. Gilligbauer, defendant Costa observed visible injuries to Mr. Gilligbauer's right arm, elbow, and both eyes.

While defendant Costa was interviewing Mr. Gilligbauer, defendant Wolfe was present.  At this time, Mr. Gilligbauer observed Kip driving by in his truck and alerted the officers.  Kip waived and smiled at the officers.  The officers observed a red substance on Kip's face, which appeared to defendant Wolfe to be blood.  While defendant Costa remained with Mr. Gilligbauer, defendant Wolfe got into his marked police cruiser, activated his lights and siren, and began pursuing Kip.  Approximately one minute later, defendant Costa left the interview with Mr. Gilligbauer to assist defendant Wolfe.  Kip failed to yield to defendant Wolfe's lights and siren, and instead, led defendant Wolfe on a high speed car chase for approximately two miles, through Shamokin Township and into neighboring Coal Township.  During

---

[5]The plaintiff disputes this fact on the basis that the defendants cite only to police department incident reports as support.  The plaintiff argues that police department incident reports are not appropriate documents to support facts asserted in seeking summary judgment.  By order dated January 8, 2007, the court addressed this argument, finding that the defendants could rely on such materials in support of their motions for summary judgment, but that the materials would have to be introduced by authenticating affidavits to conform to the requirements of Fed.R.Civ.P. 56(e) and be considered by the court.  The defendants subsequently produced such affidavits.  Therefore, to the extent that the plaintiff challenges any of the defendants' facts on this basis, the court will consider the defendants' facts as stated.

8

this time, Kip drove recklessly and disregarded stop signs[6].   The vehicle chase ended at the 900 block of Gowen Street in Coal Township, Pennsylvania.

The Coal Township defendants were on duty at the time of the vehicle chase with Kip and were following radio transmissions regarding the chase when defendant Wolfe called for assistance.

Defendant Purcell, who was on patrol at the time of the incident, knew that defendant Wolfe was pursuing a suspect in an assault with a baseball bat.  Based upon the radio transmissions, defendant Purcell believed that defendant Wolfe was in pursuit of a fleeing felon[7].  When defendant Wolfe

---

[6]The plaintiff disputes the defendants' characterization of the pursuit, arguing that this description was not provided in defendant Wolfe's deposition testimony.  This description was, however, contained in defendant Wolfe's incident report, which was prepared shortly after the incident.  Moreover, the deposition testimony and the incident report are not inconsistent, as defendant Wolfe described in his deposition a "vehicle chase," which lasted for several blocks, during which the plaintiff failed to yield for visual and audible signals.

[7]Initially, the plaintiff disputes that any radio transmission specifically described any defendant as being in hot pursuit of a fleeing felon.  With respect to this argument, the defendants do not claim that this language was used in the radio transmission, but only that it was defendant Purcell's belief, based upon the radio transmissions, that defendant Wolfe was pursuing a fleeing felon.

The plaintiff also disputes this fact arguing that the plaintiff was charged only with misdemeanor simple assault, harassment and stalking, disorderly conduct, fleeing and eluding charges and summary stop signs and yield signs and reckless driving charges.  Therefore, the plaintiff argues that none of
(continued...)

reported that the chase ended at the 900 block of Gowen Street, defendant Purcell recognized that location as the Dorkoski residence and responded to provide assistance.

Defendants Higgins and Pensyl were on duty at the time of the incident when they heard defendant Wolfe's transmissions over the police radio regarding the pursuit of Kip into their municipality, and surmised that they were likely heading to the Dorkoski home.  Defendant Pensyl responded to the Dorkoski residence to provide back-up assistance.

The vehicle chase ended when Kip stopped his truck behind the garage on Gowen Street, exited the truck, and charged at defendant Wolfe, who was in the process of exiting his cruiser.  As Kip charged at defendant Wolfe, he was "livid" and "appeared to be out of control, jumping up and down," and yelling profanities.  Because of the initial report that Kip had a weapon, defendant Wolfe testified that he drew his weapon for his own protection.  At that time, defendant Wolfe testified that Kip said to him "Why don't you just shoot me?"  Kip then turned to run from defendant Wolfe, at which time defendant Wolfe testified that he holstered his weapon and attempted to

---

[7](...continued)
Kip's actions were felonious.  With respect to this argument, simply because the plaintiff was not charged with a felony does not mean that there was no reason to believe that he committed a felony.  To this extent, assault with a baseball bat or pipe could certainly constitute an aggravated assault under 18 Pa.C.S.A. §2702, which would be either a felony in the first or second degree, depending on the circumstances.

physically subdue Kip and take him into custody.  Defendant Wolfe testified that Kip resisted arrest by spinning around and attempting to strike him in the face.  Defendant Wolfe responded with pepper spray to no avail.  Kip then broke free and ran from defendant Wolfe.  Defendant Wolfe testified that he chased Kip on foot for approximately two blocks, down an alley and around the corner onto West Pine Street.  Although he had lost sight of Kip momentarily, defendant Wolfe testified that he knew that Kip must have gone into the yard at 911 West Pine Street[8] because there was nowhere else he could have gone[9].

Upon entering the yard at 911 West Pine Street, defendant Wolfe encountered the plaintiff, Kip's father, and asked him if he saw anyone come through the yard.  The plaintiff indicated that he did not.  Defendant Wolfe again radioed for assistance, indicating that he had reason to believe that Kip was in the garage apartment on the plaintiff's property.  At this point, the plaintiff informed defendant Wolfe that he needed a search warrant and that, if he did not have one, he was trespassing.

-----

[8]The record indicates that the plaintiff's home address is 911 West Pine Street.  Gowen Street runs parallel behind Pine Street.  The garage apartment where Kip resided is located at the rear of the plaintiff's property and has doors that open onto Gowen Street.

[9]There is a dispute as to whether the gate at 911 West Pine Street was open at the time.  Defendant Wolfe testified that the gate was open. However, the plaintiff indicates that the gate is self-closing and would have automatically closed within seconds of being opened.

11

Shortly thereafter, the other defendant officers began arriving.  The plaintiff testified that he was informed that the officers did not need a warrant to search the property because they were "in hot pursuit of a felon." Defendant Wolfe informed other officers that Kip was in the garage and/or building on the plaintiff's property.  Defendant Wolfe and the other officers asked the plaintiff to open the door to the garage with his keys, but the plaintiff refused.  Defendant Griffiths advised the plaintiff that, if he did not allow the officers to open the door with the keys, they would have to kick in the door.  An altercation occurred[10], and the plaintiff was subsequently taken to the ground by defendants Costa and Pensyl.  The defendants' materials indicate that neither defendant Griffiths nor defendant Wolfe took the plaintiff to the ground[11].

After the plaintiff was in custody, defendant Griffiths reached into the plaintiff's pocket and removed a set of keys, which included the key to the garage[12].

Defendant Purcell testified that he waited by the garage doors on

---

[10]While the plaintiff denies any such altercation took place, it is clear from the plaintiff's own allegations that an altercation occurred.  However, the circumstances surrounding the altercation are in dispute.

[11]To this extent, the plaintiff has withdrawn Counts VIII and IX (state assault and battery) with respect to defendants Griffiths and Wolfe, but maintains Counts I and III.

[12]There is a dispute as to whether money was also removed from the plaintiff's pocket.

Gowen Street to see if Kip would come out of the garage that way. Thereafter, one of the Shamokin defendants opened a door to the garage and told defendant Purcell that they were going into the apartment for Kip. Defendant Purcell followed three Shamokin Officers to the apartment, where Kip was taken into custody following a struggle.

Defendant Higgins testified that after some time had elapsed without hearing any radio transmissions, he went to the plaintiff's residence.  Upon arriving, defendant Higgins testified that he went to the garage, the garage door was opened, and he stepped inside to talk to a Shamokin officer who was inside.  Defendant Higgins did not take the plaintiff to the ground, handcuff him while he was on his property, search him or see any other officer do so[13].  Defendant Higgins also did not initiate the criminal charges against the plaintiff[14].

Defendant Purcell testified that he did not take the plaintiff to the ground or handcuff him, nor did he see any other officer do so[15].  Defendant Purcell also did not search the plaintiff or remove keys or any other items

---

[13]The plaintiff notes that these allegations are the subject of Counts III, IV, VIII, and IX.  The plaintiff's counsel has stipulated to the dismissal of Counts III and IV as to defendant Higgins.

[14]Plaintiff's counsel has stipulated to the dismissal of Counts VI and VII as to defendant Higgins.  However, Counts I and V remain against defendant Higgins.

[15]Plaintiff's counsel has stipulated to the dismissal of Counts III, IV, VIII, and IX as to defendant Purcell.

from the plaintiff's pockets, nor did he see any other officer do so.  Defendant Purcell did not initiate the criminal charges against the plaintiff[16].

Coal Township and Shamokin are neighboring jurisdictions that have in place, and had in place at the time of the incident which is the subject matter of this action, a mutual aid agreement allowing officers from either municipality to make arrests in both jurisdictions.

Defendant Wolfe charged Kip with aggravated assault in addition to other charges relating to the vehicle chase incident[17].  Under Pennsylvania law, aggravated assault is a felony.  Defendant Costa charged Kip with three misdemeanors relating to the incident which took place at the bank with Mr. Gilligbauer.

As a result of the incident, defendant Pensyl filed charges against the plaintiff for aggravated assault, simple assault, obstructing administration of law or other governmental function, hindering apprehension or prosecution, and disorderly conduct[18].  The plaintiff was taken to the Coal Township Police Station, where he complained of pain and was then taken to the hospital by

---

[16]The plaintiff's counsel has stipulated to the dismissal of Counts VI and VII as to defendant Purcell, but not Counts I and V.

[17]The plaintiff admits that Kip was charged with aggravated assault, but indicates that Kip's actions did not rise to the level of an aggravated assault, as the Commonwealth could not establish a prima facie case on this charge.

[18]The plaintiff admits that defendant Pensyl filed the charges against him, but indicates that defendant Pensyl told him that it was defendant Wolfe who was "pushing" the charges.

a Coal Township officer.

The plaintiff has not sought any counseling or psychiatric treatment as a result of the incident at issue.

## A.   SHAMOKIN TOWNSHIP DEFENDANTS' MOTION AND AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT

Based upon the above facts, the Shamokin Township defendants initially argue that Counts II (§1983 claim based upon Fourth and Fourteenth Amendment violations) and XI (state trespass)[19] should be dismissed because exigent circumstances permitted them to enter the plaintiff's property without a warrant.

"It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)).  Therefore, "[w]arrantless searches and seizures inside someone's home . . . are presumptively unreasonable unless the occupants consent or probable cause and exigent circumstances exist to justify the intrusion."  United States v. Coles, 437 F.3d 361, 365 (3d Cir. 2006).  This concept applies "with equal force for purposes of arrest, even where there is independent probable cause for such an arrest."  United

---

[19]The court notes that the Shamokin defendants erroneously identified the state trespass count as Count X, which is actually the state law claim for intentional infliction of emotional distress.

States v. Zabare, 871 F.2d 272, 289 (2d Cir. 1989).

In this case, there is no dispute that the defendants did not have the plaintiff's consent to enter the garage on his property.  It is also undisputed that there was probable cause to arrest Kip Dorkoski.  The question is only whether there were exigent circumstances which justified the officers' entry into the garage without a warrant.

Whether exigent circumstances justify a warrantless search or seizure is determined from the totality of the circumstances, as they were reasonably known to, or discoverable by, officers at the time of the entry.  Parkhurst v. Trapp, 77 F.3d 707, 711 (3d Cir. 1996).  This determination is made on a case-by-case basis and focuses simply on what a reasonable, experienced police officer would believe given the circumstances.  U.S. v. Reed, 935 F.2d 641 (4th Cir. 1991); U.S. v. Williams, 431 F.3d 1115 (8th Cir. 2005).

In defining exigent circumstances, the Supreme Court identified four circumstances that justify a warrantless intrusion into a person's home: (1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspect's escape; or (4) the risk of danger to the police or other persons inside or outside the dwelling.  See Minnesota v. Olson, 495 U.S. 91, 100 (1990).

Hot pursuit involves following an individual from a public place into a private place.  United States v. Santana, 427 U.S. 38, 42-43 (1976).  The doctrine applies when the pursuit is immediate and fairly continuous from the

16

scene of the crime.  <u>Welsh</u>, 466 U.S. at 753.  Although hot pursuit of a suspect must be fairly continuous, it is not necessary that the suspect be kept physically in view at all times.  <u>See</u> e.g., <u>U.S. v. Miller</u>, 449 F.2d 974 (D.C.Cir. 1970); <u>People v. Escudero</u>, 592 P.2d 312 (Cal. 1979).  In addition, a "hot pursuit" need not be "an extended hue and cry in and about [the] public streets."  <u>Santana</u>, 427 U.S. at 42-43.  Further, "it is not necessary under cases defining hot pursuit that each defendant be in flight in order to sustain warrantless arrests of persons in their homes by pursuing police officers."  <u>Jones v. Waters</u>, 570 F.Supp. 1292, 1297 (E.D.Pa. 1983).  Where police officers know where a suspect is, but decide that it would be dangerous to enter without reinforcements, the officers are justified in waiting to enter until reinforcements arrive.  <u>See</u> <u>U.S. v. Johnson</u>, 256 F.3d 895, 908 (9th Cir. 2001)(comparing <u>U.S. v. Linsey</u>, 877 F.2d 777, 779 (9th Cir. 1989)).  Under such circumstances, the "continuity" of the chase is delayed, but not broken.  <u>Id.</u> (citing <u>United States v. Lindsay</u>, 506 F.2d 166, 173 (D.C.Cir.1974)).

In this case, the court finds that exigent circumstances existed, which justified the defendants' warrantless entry into the plaintiff's property.  To this extent, the record establishes that Kip had assaulted Mr. Gilligbauer, threatened to kill him, and brandished either a baseball bat or a pipe at the time.  While the police were investigating the incident, Kip returned to the scene of the crime and taunted Mr. Gilligbauer and the officers.  Kip was

17

noted to have a red substance on his face, which was believed to be blood. When defendant Wolfe pursued Kip in his police cruiser with lights and siren activated, Kip led defendant Wolfe on a high speed chase through Shamokin and into neighboring Coal Township.

When the vehicle chase came to an end, Kip exhibited erratic behavior and charged at defendant Wolfe, asking "Why don't you just shoot me?" Afterwards, defendant Wolfe attempted to physically subdue Kip, at which time Kip attempted to strike defendant Wolfe.  Kip was pepper sprayed.  He then ran from defendant Wolfe and a foot chase ensued, which ultimately ended at the plaintiff's property.

Given these facts, the defendants had probable cause to believe that Kip committed serious crimes in assaulting Mr. Gilligbauer and attempting to assault defendant Wolfe.  The pursuit of Kip began in a public place at the scene of the crime (the bank) and continued into a private place (the plaintiff's property).  The pursuit was immediate and fairly continuous, with defendant Wolfe losing sight of Kip only momentarily during the foot chase when he rounded a corner.  Although there was a delay in the continuity of the pursuit while defendant Wolfe waited for assistance, the pursuit was not broken.

The plaintiff makes much of the fact that Kip was not charged with a felony for the assault upon Mr. Gilligbauer and that the felony charged for his attempted assault upon defendant Wolfe was later dismissed for the

Commonwealth's failure to establish a prima facie case.  However, whether there was probable cause to believe that a crime was committed is a question separate and distinct as to whether the Commonwealth can later establish a prima facie case.  Probability, not a prima facie showing of criminal activity, is the standard of probable cause.  Illinois v. Gates, 462 U.S. 213, 231-32 (1983); Spinelli v. United States, 393 U.S. 410, 419 (1969).

Citing to Welsh v. Wisconsin, supra, the plaintiff further argues that the "pursuit" ended when Kip entered into the garage on the plaintiff's property because he had retreated into his private residence.  With respect to this argument, the hot pursuit exception presupposes entry into a private place, such as a residence.  Therefore, retreat into a private residence, alone, does not negate a hot pursuit. The claim of hot pursuit in Welsh failed because there was no immediate, continuous pursuit of the suspect from the scene, and because there was an insufficient showing of a threat of harm when the suspect arrived home.  Here, there was an immediate, fairly continuous pursuit of Kip, and there is a sufficient showing that, even though Kip retreated into his residence, he may still have posed a risk of harm, either to himself or others who may have been inside or outside the property, because of his erratic behavior.  Therefore, the court finds that the hot pursuit did not end simply because Kip retreated into the garage.

The plaintiff further argues that, because defendant Wolfe was the only officer who physically pursued Kip onto the plaintiff's property, the hot pursuit

19

exception cannot apply.  However, as previously cited, where a pursuing officer knows where a suspect is, but decides that it would be dangerous to enter without reinforcements, the officer is justified in waiting to enter until reinforcements arrive.  See U.S. v. Johnson, 256 F.3d 895, 908 (9th Cir. 2001)(comparing  U.S. v. Linsey, 877 F.2d 777, 779 (9th Cir. 1989)). Moreover, the other officers were entitled to rely upon information provided by defendant Wolfe with respect to the reasonableness of the warrantless entry.  See Rogers v. Powell, 120 F.3d 446, 455 (3d Cir. 1997).  See also Tillman v. Alonso, 2005 WL 3488927 (E.D.Pa.)(citing McHenry v. County of Delaware, 2005 U.S.Dist. LEXIS 25009 at *16-17 (E.D.Pa.)(citing Doherty v. Haverkamp, 1997 U.S.Dist. LEXIS 7547 at *17 (E.D.Pa.)).

The court notes that, in addition to the hot pursuit exception, the defendants were also justified in their warrantless entry based upon the risk of danger exception.  Given Kip's behavior, both prior to and after the pursuit by defendant Wolfe, it is clear that the defendants could reasonably have perceived Kip to be a danger to himself or to anybody else who may have been in the property.

Based upon the above, the Shamokin defendants' motion for summary judgment will be granted with respect to Count II of the plaintiff's complaint.

The parties agree that, in order to sustain a claim under Count XI, the plaintiff would be required to establish an unprivileged, intentional intrusion upon the plaintiff's land by the defendant officers.  Graham Oil Co. v. B.P. Oil

Co., 885 F.Supp. 716 (W.D.Pa. 1994).  To the extent that the court has found that exigent circumstances justified the defendants' entry into the plaintiff's property, the defendants' entry was not unprivileged and the plaintiff's state law claim fails.  Therefore, the Shamokin defendants' motion for summary judgment will also be granted with respect to Count XI of the plaintiff's complaint.

The Shamokin Township defendants further argue that they are entitled to qualified immunity for entering plaintiff's property without a warrant.

According to the doctrine of qualified immunity, government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir.1997).  In §1983 cases involving the Fourth Amendment, qualified immunity decisions require the judge to determine, not only the currently applicable law, but whether that law was clearly established at the time the action occurred.  Rogers v. Powell, 120 F.3d at 453.  If the law was clearly established at the time of the conduct at issue, then the court must determine "whether the actions of the officers, equipped with the knowledge of clearly established law, were objectively reasonable."  Sharrar v. Felsing, 128 F.3d at 828.

As discussed above, the law establishing guidelines for exigent circumstances existed at the time of the warrantless entry into the plaintiff's

21

property.  <u>See</u> <u>Sharrar v. Felsing</u>, <u>supra</u> (quoting <u>Welsh v. Wisconsin</u>, 466 U.S. 740, 749 (1984)).  Since the courts clearly established guidelines for establishing exigent circumstances long before the search of the plaintiff's property, this court must now determine whether the defendants could have believed that their conduct was lawful, in light of clearly established Fourth Amendment law and information in their possession at the time of the entry. <u>See</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991).

In the instant case, the defendants believed that the circumstances surrounding the warrantless entry qualified as exigent because they were in pursuit of a suspected felon, who had committed an assault upon Mr. Gilligbauer and an attempted assault upon a police officer.  He had what appeared to be blood on his face.  He led defendant Wolfe on both a vehicle and a foot chase.  His behavior was erratic.  At one point, he had asked defendant Wolfe "Why don't you just shoot me?"  After being doused with pepper spray, he then fled into the garage apartment.

Even viewing the facts in the light most favorable to the plaintiff, as the court must do on the defendants' motion for summary judgment, the court finds that the defendants reasonably believed that exigent circumstances required entry into the plaintiff's property.  Therefore, the defendants are entitled to qualified immunity as a matter of law.  The Shamokin defendants' motion for summary judgment will be granted on this basis as well.

Next, the Shamokin Township defendants argue that the plaintiff's

22

Fourteenth Amendment claims should be dismissed because the plaintiff's claims of improper search, seizure, and arrest are specifically covered under the Fourth Amendment.

With respect to this argument, the plaintiff properly states that Fourth Amendment is made applicable to state actors by operation of the Fourteenth Amendment.  See generally Mapp v. Ohio, 367 U.S. 643 (1961).  However, the Supreme Court has also found that where "a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998)(citing Albright v. Oliver, 510 U.S. 266, 273 (1994)(quoting Graham v. Connor, 490 U.S. 386, 395 (1989)(internal quotation marks omitted)).  The Fourth Amendment provides the proper analysis for the plaintiff's claims of an improper search, seizure and arrest.  That Amendment, rather than the more generalized Fourteenth Amendment should be used to analyze the plaintiff's claim.  As such, the defendants' motion for summary judgment will be granted with respect to this claim.

The Shamokin Township defendants also argue that Counts VI (malicious prosecution) and VII (abuse of process) should be dismissed against defendant Wolfe because he did not initiate the charges against the plaintiff.

23

With respect to Count VI, a claim for malicious prosecution, the parties agree that, in order to sustain this claim, the plaintiff must demonstrate that defendant Wolfe initiated criminal proceedings; the criminal proceedings ended in the plaintiff's favor; the proceedings were initiated without probable cause; and that defendant Wolfe acted maliciously or for a purpose other than bringing the plaintiff to justice. Kelly v. General Teamsters Chauffers and Helpers Union 249, 544 A.2d 940, 941 (1988).

The defendants argue that the plaintiff has failed to demonstrate that defendant Wolfe initiated the criminal proceedings against him. In evaluating whether a defendant initiated criminal proceedings, the court must determine whether the defendant either directly instituted the proceedings against the plaintiff or can fairly be charged with responsibility for institution of the proceedings. Bradley v. General Accident Insurance Co., 778 A.2d 707, 710 (Pa.Super. 2001).

Here, the plaintiff has testified that, in the police car on the way from his home to the police station, defendant Higgins told him that, if it were up to Coal Township, the plaintiff would not be arrested, but that defendant Wolfe wanted him arrested and was the one "pushing" for the charges. The plaintiff further testified that defendant Pensyl indicated that he would have agreed to drop the charges against the plaintiff, but also stated that defendant Wolfe was pushing the charges. The record reflects that defendant Wolfe appeared to testify against the plaintiff at his preliminary hearing. Based

upon these facts, there is a reasonable question as to whether defendant Wolfe can fairly be charged with responsibility for institution of the proceedings.  Therefore, the defendants' motion for summary judgment on Count VI against defendant Wolfe will be denied[20].

With respect to Count VII, the abuse of process claim, the parties agree that, in order to succeed on this claim, the plaintiff must demonstrate that the defendant used a legal process against him; primarily to accomplish a purpose for which the process was not designed; and harm has been caused the plaintiff.  Douris v. Schweiker, 229 F.Supp.2d 391, 404 (E.D.Pa. 2002).  "This requires that the plaintiff offer some proof of a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process.'"  Godshalk v. Borough of Bangor, 2004 WL 999546, at *13 (E.D.Pa. May 5, 2004) (citation omitted). Some "examples of actions that are recoverable under the abuse of process tort are 'extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution.'"  Id. (citation omitted).  "'There is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion.'"  Id. at *14; accord Douris, 229 F.Supp.2d at 404.  "That judicial process was initiated with a bad

---

[20]With respect to the remaining factors of a malicious prosecution claim, the defendants specifically concede that the proceedings ended in the plaintiff's favor.  They do not address the other factors.

motive is not enough; an allegation of coercive use of the process is required." Internet Billions Domain v. Venetian Casino Resort, LLC, 2002 WL 1610032, at *3 (E.D.Pa. May 31, 2002).

Here, the plaintiff alleges that defendant Wolfe pushed the charges against him in order to cover up his illegal conduct with respect to the seizure and search of the plaintiff and his property.  While this would constitute an improper motive in the initiation of charges, it is insufficient to allege a coercive use of the process.  Therefore, the defendants' motion for summary judgment on Count VII will be granted.

Finally, the Shamokin Township defendants argue that Count X, which alleges intentional infliction of emotional distress, should be dismissed because the plaintiff suffered no cognizable injury.

To prove a claim for intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe.  Hoy v. Angelone, 691 A.2d 476, 482 (Pa.Super. 1997), affirmed 720 A.2d 745 (Pa. 1998)(citing Hooter v. Pennsylvania College of Optometry, 601 F.Supp. 1151, 1155 (E.D.Pa.1984) and Section 46 of the Restatement (Second) of Torts)).

In order to state a claim upon which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiff must allege physical injury.  Rolla v. Westmoreland Health System, 651 A.2d 160, 163 (Pa.Super.

1994).   To recover for intentional infliction of emotional distress in Pennsylvania, a plaintiff must support the claim of emotional distress with competent medical evidence, in the form of expert medical evidence.  See Bolden v. Southeastern Pa. Transp. Auth., 21 F.3d 29, 35 (3d Cir. 1994)(citing Williams v. Guzzardi, 875 F.2d 46, 51-52 (3d Cir. 1989); Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988 (1987)); Williams v. Fedor, 69 F.Supp.2d 649, 669 (M.D.Pa. 1999)(citations omitted); DeBellis v. Kulp, 166 F.Supp.2d 255, 281 (E.D.Pa. 2001); Simmons v. Galin, 2002 WL 109611 at *4 (E.D.Pa.); Johnson v. Greyhound Lines, 1998 WL 633699 at **1-2 (E.D.Pa.).

Here, although the plaintiff alleges that he suffered physical injury and sees professionals for his physical pain, he has not provided any medical evidence to support his claim of intentional infliction of emotional distress. Therefore, because no medical evidence has been submitted, the defendants' motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress will be granted.


### B.   COAL TOWNSHIP DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT

Initially, the Coal Township defendants argue that defendants Higgins and Purcell are entitled to qualified immunity on Counts I and V of the plaintiff's complaint because, as a transporting officer, either of them were

entitled to reasonably rely upon the statements of fellow officers that the plaintiff attempted to assault Shamokin Township officers with a large piece of steel when they attempted to enter his garage.

The parties agree that, in order to establish a claim for false arrest in violation of the Fourth Amendment, the plaintiff must prove that (1) there was an arrest/seizure (2) that was made without probable cause.  See e.g., Beg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000); Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)(citing Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988)).  They further agree that a "seizure" occurs "whenever a police officer accosts an individual and restricts his freedom to walk away." Terry v. Ohio, 392 U.S. 1, 16 (1968).

There is a dispute as to whether defendant Higgins or defendant Purcell transported the plaintiff to the Coal Township Police Department and placed him in a holding cell.  Defendant Purcell claims that he transported the plaintiff, while the plaintiff testified that it was defendant Higgins. Regardless of which of the defendants transported the plaintiff to the Coal Township Police Department, the court finds that either would be entitled to qualified immunity.  To this extent, the Third Circuit has held that "where a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability on a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest

28

existed." Rogers v. Powell, 120 F.3d at 455.

Here, there is no dispute in the record that neither defendant Higgins, nor defendant Purcell, was involved with the plaintiff being taken into custody until the plaintiff was transported to the Coal Township Police Department. Defendant Higgins testified that, through conversations with defendants Wolfe and Pensyl, he was informed that the plaintiff had interfered with the arrest of Kip and attempted to strike one of the officers with a piece of steel. The record further reflects that defendant Purcell was advised that the plaintiff had been placed under arrest for swinging a piece of metal at Officer Wolfe.  Based upon the information provided to defendants Higgins and Purcell, it was objectively reasonable for either of them to believe that probable cause for the plaintiff's arrest existed.

While the plaintiff takes issue with reliance on Rogers, claiming that the facts in Rogers involved officers, who relied upon information that a warrant for arrest was valid and later determined that it was not valid after the defendant was in custody, the court did not limit its holding to only those cases involving statements made with respect to warrants, and the court finds no reason to do so here.  See also Bilida v. McCleod, 211 F.3d 166, 174-75 (1st Cir. 2000)("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (e.g. a warrant,

29

<u>probable cause</u>, exigent circumstances.")(emphasis added).   Therefore, defendants Higgins and Purcell, to the extent that either of them were involved in the plaintiff's transportation to the Coal Township Police Department, are entitled to qualified immunity with respect to Counts I and V of the plaintiff's complaint.

The Coal Township defendants also argue that they are entitled to summary judgment on Counts II and XI of the plaintiff's complaint because exigent circumstances existed which allowed entry upon the plaintiff's property without a warrant.   Moreover, even assuming that exigent circumstances did not exist to justify a warrantless entry upon the plaintiff's property, the Coal Township defendants argue that they are entitled to qualified immunity because they reasonably relied upon statements made by the Shamokin officers.

For the reasons set forth above in addressing the Shamokin Township defendants' motion for partial summary judgment on Counts II and XI, the Coal Township defendants' motion for partial summary judgment will also be granted.

Next, the Coal Township defendants argue that they are entitled to summary judgment on Count IV of the plaintiff's complaint against defendant Pensyl because defendant Pensyl neither searched the plaintiff, nor removed keys from the pocket of the plaintiff.   In addition, it is argued that defendant Pensyl did not witness another officer remove the keys, such that he had any

reason to intervene or that his alleged failure to do so was a substantial cause of the plaintiff's alleged injuries.

With respect to this argument, while defendant Pensyl testified that one of the other defendants reached into the plaintiff's pocket and took keys, there is a dispute as to whether defendant Pensyl searched the plaintiff or removed items other than the keys from the plaintiff's pocket.  In addition to keys, the plaintiff alleges that money was removed from his pocket.  The plaintiff further testified that, while someone was taking the contents from his pocket, he heard defendant Pensyl's voice telling him to tell Kip to come out of the garage so he did not get hurt.  The plaintiff argues that defendant Pensyl was present during the search of his person and failed to intervene. Because there is a question of fact with respect to this issue, the Coal Township defendants' motion for summary judgment on Count VI with respect to defendant Pensyl will be denied.

Finally, the Coal Township defendants argue that they are entitled to summary judgment on Count X of the plaintiff's complaint because plaintiff has not produced any evidence establishing that he suffered a severe emotional injury as a result of his encounter with the defendants.

For the reasons set forth above in addressing the Shamokin Township defendants' motion and amended motion for partial summary judgment, the Coal Township defendants' motion for partial summary judgment will be granted.

31

## IV.   CONCLUSION

On the basis of the foregoing, **IT IS HEREBY ORDERED THAT:**

**(1)**   the Shamokin Township Defendants' motion and amended motion for partial summary judgment, **(Doc. Nos. 39 & 45)**, are **DENIED** to the extent that the defendants seek summary judgment on Count VI of the plaintiff's complaint against defendant Wolfe;

**(2)**   the Shamokin Township Defendants' motion and amended motion for partial summary judgment, **(Doc. Nos. 39 & 45)**, are **GRANTED** in all other respects;

**(3)**   the Coal Township Defendants' motion for partial summary judgment, **(Doc. No. 42)**, is **DENIED** to the extent that the defendant seek summary judgment on Count IV of the plaintiff's complaint with respect to defendant Pensyl; and

**(4)**   the Coal Township Defendants' motion for partial summary judgment, **(Doc. No. 42)**, is **GRANTED** in all other respects.

**S/ Malachy E. Mannion**
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:**  March 9, 2007
O:\shared\MEMORANDUMS\2005 MEMORADUMS\05-0705.01.wpd

32